**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PROSKAUER ROSE LLP,                            :
                                               :
                          Plaintiff,           :
                                               :          1:22-cv-10918-AT-SLC
              v.                               :
                                               :
JONATHAN O'BRIEN,                              :
                                               :
                          Defendant.           :
                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE**
**TO ENFORCE THE TEMPORARY RESTRAINING ORDER**

Plaintiff Proskauer Rose LLP ("Proskauer") respectfully submits this memorandum of

law in support of its motion for an order requiring defendant Jonathan O'Brien to provide the

password to the Proskauer-owned iPhone issued to him by the firm during the course of his

employment, in accordance with this Court's December 28, 2022 Temporary Restraining Order.

**PRELIMINARY STATEMENT**

On December 28, 2022, this Court issued an Order to Show Cause for an *Ex Parte*

Temporary Restraining Order and a Preliminary Injunction (the "December 28 Order") requiring

defendant Jonathan O'Brien to, *inter alia*, return all of Proskauer's proprietary, confidential,

and/or trade secret information and to allow for the "permanent removal, deletion, and

destruction of all copies of Proskauer's electronic files or information . . . in his possession,

subject to the supervision of Proskauer . . . ." O'Brien returned several devices to Proskauer

including a firm-owned iPhone.

However, O'Brien intentionally withheld and refuses to provide Proskauer with the

password necessary to unlock that phone, leaving Proskauer unable to access its own device to

determine whether it contains evidence of O'Brien's misconduct.  Remarkably, on or about December 30, 2022, **<u>after</u>** this Court issued its December 28 Order, O'Brien took one or more affirmative steps to disable the firm's mobile device management ("MDM") software from his Proskauer-issued iPhone, thus preventing Proskauer from remotely accessing the phone, monitoring its activity, or remotely logging onto the phone without O'Brien's password notwithstanding the firm's clear right to do all of these things pursuant to a written policy O'Brien agreed to follow.  Hsu Decl. ¶ 12.

## <u>ARGUMENT</u>

O'Brien's refusal to provide the password for the Proskauer-owned iPhone issued to him by the firm violates both the applicable Proskauer policy to which he agreed (and, as COO, was in fact responsible for implementing and enforcing) and the terms of the December 28 Order.  By refusing to provide the password, O'Brien is obstructing Proskauer from repossessing and reviewing its own information, from confirming that information is still on the device, and from accessing potentially valuable evidence stored on the phone, including call logs, emails, notes, pictures and metadata that might speak to O'Brien's theft, misuse and potential dissemination of Proskauer's information, or his coordination with third parties.  This is a subversion of both the December 28 Order's intent as well as its text—if Proskauer is unable to access, confirm or review any of its own information on its own device, the device has functionally and effectively not been returned to Proskauer.  [*See* ECF No. 15 at 3–4 ("Mr. O'Brien . . . shall return to Proskauer . . . any and all of Proskauer's proprietary, confidential and/or trade secret information . . . .")].  O'Brien's refusal to provide the password and interference with the firm's means to access the device also frustrates the December 28 Order's mandate on O'Brien to "permit the permanent removal, deletion, and destruction of all copies of Proskauer's electronic files or

information transmitted to O'Brien."  [*See* ECF No. 15 at 4].  If Proskauer cannot get into its

own device, then it cannot remove or delete files O'Brien has stored on the device during the

course of its use.

Importantly, although Proskauer ordinarily has the means to bypass password protection

on firm-issued devices, it is unable to do so in this case because on or after December 30, 2022

(after the Court issued the December 28 Order), O'Brien took one or more affirmative steps to

disable the MDM software that would have enabled the firm to access the phone without a

password.  Hsu Decl. ¶¶ 10–14.

O'Brien's counsel have refused Proskauer's counsel's multiple requests for the password

until the parties agree on "a reasonable protocol that protects the privacy interests of Mr. O'Brien

and third parties."  Hamid Decl. Ex. 1.  Specifically, O'Brien's counsel argues that

"communications with [O'Brien's] wife, attorneys, and Paul Hastings" on the Proskauer device

are either privileged or subject to a nondisclosure agreement.  But Proskauer's Computer and

Communications Use and Data Protection Policy (the "Policy"), which was reviewed by O'Brien

and by which he agreed to be bound, makes clear that he has no reasonable expectation of

privacy with respect to any personal communications he may have stored on the device.

Specifically, Section 9.10.2 of the Policy provides:

> The device is and remains owned by the Firm, and to the extent
> permitted by law **you waive any expectation of privacy with
> respect to the device and the data, content and materials on it
> or transmitted through it**.  To the extent permitted by law, the
> Firm has the right to monitor your use of the device and any data,
> content and materials on it or transmitted through it, whether
> personal or not, and you consent to this.  **Since your device is
> owned by the Firm, the device password is also owned by the
> Firm and to the extent permitted by law, you agree to provide
> it to the Firm upon request**.

Hsu Decl. Ex. 1 (emphasis added); *see also id.* Ex. 4.  In light of these explicit provisions, O'Brien had no reasonable expectation of privacy, no privacy rights or privilege protection (including the spousal and attorney-client privileges) regarding the content of Proskauer-owned iPhone.  *See, e.g.*, *In re Reserve Fund Securities and Derivative Litigation*, 275 F.R.D. 154, 165 n.6 (S.D.N.Y., 2011) ("[G]iven [employer's] email policy, personal email sent over that system is not confidential and cannot be said to have been sent 'in confidence.' Accordingly, the emails are not subject to the marital communications privilege . . . ."); *Shih v. Petal Card, Inc.*, 565 F. Supp. 3d 557, 572 (S.D.N.Y. 2021) ("[T]he use of an employer's email account negated any reasonable expectation of confidentiality and thus vitiated the [spousal] privilege"); *Peerenboom v. Marvel Entm't, LLC*, 148 A.D.3d 531, 531–32 (1st Dep't 2017) ("Perlmutter lacked any reasonable expectation of privacy in his personal use of the email system of Marvel, his employer, and correspondingly lacked the reasonable assurance of confidentiality that is an essential element of the attorney-client privilege"); *United States v. Etkin*, No. 07-CR-913(KMK), 2008 WL 482281, at *4 (S.D.N.Y. Feb. 20, 2008) ("[E]mployees do not have a reasonable expectation of privacy in the contents of their work computers when their employers communicate to them . . . a policy under which the employer may monitor or inspect the computers at any time."); *Terán v. Mut. Sec. Credit Union*, No. 3:16-cv-00466 (VLB), 2017 WL 11477128, at *5 (D. Conn. Sep. 29, 2017) ("[Employee] was aware that [employer] had an email policy which expressly stated that computer files and the email system furnished to employees were company property, and that computer usage and files were subject to monitoring without exception.  Plaintiff therefore had no reasonable expectation that his emails with his wife were confidential, and the emails therefore are not privileged.").[1]

---

[1] To be clear, Proskauer is not interested in O'Brien's personal communications that are not

Whether O'Brien has a nondisclosure agreement in place with Paul Hastings is irrelevant to this analysis.  *See, e.g*, *Doe v. Benjamin Zaremski M.D., P.C.*, 21-cv-3187 (ER), 2022 WL 2966041, at *10 (S.D.N.Y. July 27, 2022) ("[N]ondisclosure agreements do not preclude discovery in federal litigation.); *Hoffman v. Sbarro, Inc.*, 1997 WL 736703, at *1 (S.D.N.Y.,1997) ("The non-disclosure agreement provides no support for the requested relief. To the extent that the agreement might be construed as requiring an employee to withhold evidence relevant to litigation designed to enforce federal statutory rights, it is void."; *Vringo, Inc. v. ZTE Corp.*, No. 14-cv-4988, 2015 WL 3498634, at *8 (S.D.N.Y. June 3, 2015) ("[A]s a matter of public policy . . . the NDA is not an agreement to suppress evidence."); *Shvartser v. Lekser*, 270 F. Supp.3d 96, 98 (D.D.C. 2017) ("[C]onfidentiality agreements will not stand as a barrier to discovery between two parties in litigation . . . . [T]he non-disclosure agreement itself does not confer a legal privilege from discovery on any documents that were not already privileged.); *BLK Enterprises, LLC v. Unix Packaging, Inc.*, 2018 WL 5993841, at *4 (C.D. Cal., 2018) ("Parties cannot simply vitiate their discovery obligations by asserting third party privacy rights based on NDAs").

Moreover, the communications O'Brien has blocked Proskauer from accessing on its own device are of core relevance to Proskauer's claims and are likely to produce relevant evidence. For example, O'Brien's discussions with Paul Hastings, the law firm with which O'Brien was in discussions to join, are relevant to see whether O'Brien shared or offered to share any of Proskauer's proprietary information with a competitor.  Likewise, O'Brien's communications

---

relevant to this case.  But O'Brien should not be permitted to raise privacy concerns and demand a time consuming forensic process that will impede Proskauer's ongoing investigation of his wrongdoing when he agreed to (and, indeed, was charged with enforcing) a very clear and standard policy stating he has no right to privacy with respect to firm-owned devices.

with others (including, potentially, other Proskauer employees) concerning his plans to leave Proskauer or join Paul Hastings are highly relevant.  Because Proskauer had an unambiguous right to access the content of the firm-owned iPhone at any time, O'Brien had no expectation of confidentiality and thus, by definition, any communications with counsel on the iPhone are not privileged.

Proskauer has a compelling interest in reviewing the content of its own device in connection with its ongoing investigation and the pending litigation.  O'Brien's obstruction of that work, based on purported concerns about privacy or the attorney-client privilege, is unsustainable given that he has expressly acknowledged that he has no reasonable expectation of privacy and consented to Proskauer reviewing any personal communications on the device.

## CONCLUSION

For the foregoing reasons, Proskauer respectfully requests that its motion for order to show cause to enforce the December 28 Order be granted.

Dated:  New York, New York
        January 13, 2023

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

By:____/s/ Mark P. Goodman_____
   Mark P. Goodman
   Jyotin Hamid
   Adam C. Saunders
   Jaime M. Fried
   66 Hudson Boulevard
   New York, New York 10001
   (212) 909-6000

*Attorneys for Plaintiff Proskauer Rose LLP*