UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
PROSKAUER ROSE LLP,  :
                    Plaintiff,  :
                    :   1:22-cv-10918-AT-SLC
      v. :
JONATHAN O'BRIEN, :
                    Defendant.  :
------------------------------------x

## SECOND DECLARATION OF DARYN A. GROSSMAN IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

I, Daryn A. Grossman, hereby declare as follows:

1. I am the Managing Partner of plaintiff Proskauer Rose LLP ("Proskauer" or the "Firm"). I have personal knowledge of the facts set forth herein and, if called to do so, could competently testify thereto.

2. I have reviewed the declaration submitted by Mr. O'Brien in this matter on January 11, 2023 ("O'Brien Decl."), and I submit this reply declaration to address certain specific points he makes therein.

3. Mr. O'Brien contends that he needed to work on his vacation and did not want to resign from Proskauer until the end of the calendar year so as not to "leave Proskauer in the lurch for their fiscal year-end." O'Brien Decl. ¶ 68. In fact, Proskauer's fiscal year ends on October 31. In August, the Firm begins a countdown to year-end, and from August to October 31 each year, the Firm's partners and financial staff expend enormous effort to meet its billing and collections goals for the year.

4. In the quiet period after the close of the fiscal year—and particularly after mid- December after Proskauer's Executive Committee has already concluded its year-end analyses and determined profit allocations and personnel bonuses—there is typically little work for the Firm's finance and administrative leadership. The latest date by which payment information had to be input into our Human Resources Information System for 2022 compensation (which includes partner, non-partner lawyer, and business services compensation) was December 15, 2022. Mr. O'Brien's vacation did not commence until one week after that latest deadline.

5. To my knowledge, there is no Proskauer-related business need that would have required Mr. O'Brien to download and bring thousands of Firm documents with him on his vacation in Mauritius from December 21, 2022 through January 5, 2023. Were Mr. O'Brien to argue that he needed that information to assist us in his transition, that also would be highly unlikely. Most of the information he took would have been irrelevant to transition discussions. What we needed for transition was an understanding of processes and his job responsibilities, and how that could be covered in his absence. We of course have access to any of the financial and practice data resident on our systems. Furthermore, there were several key tax issues we had been working on when Mr. O'Brien delivered his notice. Information relating to those issues is curiously absent from the information he downloaded. Had he intended to actually work to transition his ongoing responsibilities during vacation, he would not have been able to do that without that information.

6. On January 11, 2023, Jeremy Russo (Proskauer's former Director of Financial Planning and Analysis) submitted a Declaration opposing Proskauer's Motion for a Preliminary Injunction.

7. On December 27, 2022, shortly before Proskauer commenced this action against Mr. O'Brien, Jeremy Russo told me that he first learned the news of Mr. O'Brien's resignation on a call with Proskauer's Chairman, Steven Ellis. The evidence makes clear that Mr. Russo's statement was false. Mr. Russo left behind detailed handwritten notes in which Mr. Russo recounts that he feigned surprise when Mr. Ellis called him to tell him of Mr. O'Brien's resignation. In a note titled "SE Call," which based on the content of the note, I understand to refer to that call with Mr. Ellis, Mr. Russo wrote: "Not sure if you know yet or if word travels but yesterday, [O'Brien]/[Whyte] resigned. I act[ed] shocked."

8. Attached as **Exhibit 1** is a true and correct copy of the relevant portion of the handwritten notes from Mr. Russo's notebook.

9. I have been informed by Ken Hsu, Proskauer's Information Security and Technology Officer that: (a) On December 16, 2022, at approximately 10:34 am, Mr. Russo created a PST file which he named "mp.zip."; and (b) eleven minutes later – at approximately 10:45 am – Mr. Russo re-named that file "2022 tax documents.zip," and then helped Mr. O'Brien copy it to a removable USB storage device. I have reviewed that file in its entirety and have determined that it does not contain any tax-related documents.

10. In the December 27 discussion with Mr. Russo, we asked him about the re-naming of the file "2022 tax documents." Mr. Russo initially claimed that he was not

familiar with that file name and that he had not changed the name of the file. Upon further, pointed questioning, Mr. Russo finally admitted that he "must have" so re-named the file. Mr. Russo also acknowledged that the name of that file was not indicative of its contents, and professed to have no idea why he re-named and mis-labeled it "2022 tax documents." We asked that question a number of times and each time Mr. Russo provided the same substantive answer, i.e., he did not know why he re-named the file "2022 tax documents."

11. In the December 27 discussion, Mr. Russo conceded that the sequence of events from creating the file, re-naming it a way that is inconsistent with its contents, and then assisting Mr. O'Brien in copying it to a removable USB storage device, looks "suspicious."

Executed at New York, New York on this 18th day of January 2023. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____

Daryn A. Grossman